1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LOUREECE CLARK,                              No.  2:12-cv-2687 TLN GGH (HC)

12              Petitioner,

13        v.                                      FINDINGS AND RECOMMENDATIONS

14   GREG LEWIS, Warden,

15              Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment entered against him on July 15,

19   2011, following a no contest plea in the Sacramento County Superior Court on two counts of

20   second degree robbery and one count of evading a police officer.  He seeks federal habeas relief

21   ostensibly on the following grounds: (1) his motion to withdraw his plea was improperly denied;

22   (2) the prosecution failed to disclose evidence favorable to petitioner at his trial; and, (3) he was

23   denied effective assistance of counsel.  ECF No. 1, 3-4.  Upon careful consideration of the record

24   and the applicable law, the undersigned will recommend that petitioner's application for habeas

25   corpus relief be denied.

26   BACKGROUND

27        This action comes before the Court with an irregular procedural background due to

28   numerous state court proceedings, appeal filings, petitions for review, and petitions for habeas

                                              1

corpus.

I.  Factual Background and Trial

The following factual summary is quoted from the opinion of the California Court of Appeal, Third District, in petitioner's second appeal:

> On August 8, 2009, Jordan Latour and Marcus Zapata committed an armed robbery of a Wells Fargo Bank in Rocklin.  The robbers wore ski masks, pointed their guns at bank employees, and directed everyone to lie on the ground.  After emptying the tellers' drawers, the robbers fled the bank and entered a nearby parked car.  Defendant Loureece Clark, the driver, drove off, fleeing from pursuing officers at speeds exceeding 100 miles per hour.  The car eventually exited Interstate 80 and parked in a business complex near the freeway.
>
> A witness saw Latour and Zapata, wearing ski masks, exit the parked car and run behind a building.  Defendant then drove off. The witness informed a nearby Sacramento County Sheriff's deputy about the suspicious activity.  The deputy, unaware there had been a robbery, approached Latour and Zapata. Latour fired several shots from a pistol at the deputy, wounding him.  The deputy fled to safety, while the two robbers fled in the opposite direction. Defendant was later found in a nearby shed.

Lod. Doc. 9.

On October 7, 2010, Petitioner was charged in the Sacramento County Superior Court with the following: second degree robbery of Wells Fargo Bank while armed with a firearm; second degree robbery of bank teller Anne Beaumont while armed with a firearm; second degree robbery of bank teller Ioana Crivineanu while armed with a firearm; evading a police officer; assault with a firearm upon bank employee Ali Khosroshahi; attempted second degree robbery of bank teller Brenda Galindo; misdemeanor resisting arrest; and, attempted murder of Sacramento Sheriff's Deputy Duke Lewis.  Lod. Doc. 22, Clerk's Transcript on Appeal (C068785) ("CT"), 207-216.  On December 9, 2010, a jury found petitioner guilty of only one charge, misdemeanor resisting arrest, but was deadlocked on the remaining charges.  Id. at 13, 334-335; Lod. Doc. 23, Reporter's Transcript on Appeal (C068785) ("RT"), 1212-1215.  The trial court declared a mistrial on the unresolved counts, which the prosecution elected to retry.  Lod. Doc. 22, CT, 13; Lod. Doc. 23, RT, 1214-1218.

/////

2

1   II. <u>Subsequent State Court Proceedings</u>

2        On May 2, 2011, during pretrial proceedings for his second trial, petitioner moved to

3   represent himself.[1]  Lod. Doc. 22, CT, 16.  However, at the next hearing held on May 6, 2011,

4   petitioner withdrew the motion.  Lod. Doc. 22, CT, 16; Lod. Doc. 23, Supplemental Reporter's

5   Transcript on Appeal ("SRT") (C068785), 246-247.

6        On June 14, 2011, petitioner pled no contest to three counts—second degree robbery of

7   bank teller Anne Beaumont with the armed allegation of the charge stricken, second degree

8   robbery of bank teller Ioana Crivineanu with the armed allegation of the charge stricken, and

9   evading a police officer—in exchange for a stipulated term of 6 years imprisonment.  Doc. 22,

10  CT, 18; Lod. Doc. 23, RT, 1222-1234.  Upon entering the plea, Judge Trena Burger-Plavan stated

11  that petitioner could receive 13 years and 4 months if he went to trial and was convicted of all

12  counts.  <u>Id.</u> at 1226.  Petitioner's counsel stated that he explained that potential consequence of

13  going to trial with petitioner.  <u>Id.</u>  The judge then asked petitioner numerous questions

14  considering whether he was prepared to enter the plea, understood the consequences of entering

15  the plea, and had sufficient time to discuss the plea and its consequences with his attorney.  Lod.

16  Doc. 23, RT, 1224-1227.  Petitioner responded to each question in various forms of the

17  affirmative.  <u>Id.</u>  The judge also advised petitioner "that because of the offenses to which [he

18  pled] are considered to be serious felonies, or what is referred to in California as strikes, those can

19  be used to enhance [his] sentence for any future felony convictions that [he may] receive."  <u>Id.</u> at

20  1227.  Again, petitioner answered in the affirmative.  Judge Burger-Plavan also advised petitioner

21  that he must give up certain constitutional rights before she could accept his plea, which the

22  petitioner stated he understood.  Petitioner, joined by his attorney and the prosecution, then gave

23  up those rights.  <u>Id.</u> at 1227-1228.  Finally, petitioner stated that no other promises were made

24  causing him to enter the plea, that he was not threatened or pressured in any way to enter the plea,

25  and that he was not under the influence of alcohol, drugs or medication causing him difficulty in

26  _____

[1]      Petitioner filed two similar motions before his first trial, on June 7, 2010, and June 30,
27  2010.  Lod. Doc. 22, CT, 200-204.  Petitioner withdrew his first petition on June 24, 2010.  <u>Id.</u>at
8.  The second motion was "dropped" on July 9, 2010 because petitioner had "counsel and is not
28  allowed to file motions."  <u>Id.</u> at 9, 203.

1    understanding the proceedings.  Id. at 1228.  After formally pleading "no contest" to the agreed

2    upon charges, Judge Burger-Plavan asked petitioner whether he was "entering each of [the] pleas

3    freely and voluntarily," to which petitioner responded in the affirmative.  Id. at 1232.

4         Subsequently, on June 24, 2011, petitioner filed a pro se motion to withdraw his plea.

5    Lod. Doc. 22, CT, 422-428.  First, petitioner argued that his counsel misadvised him of the direct

6    consequences of the plea.  Id. at 424.  Petitioner alleged that his attorney "assured [him] that

7    although the two robbery convictions deem two strikes under California law but in reality, it was

8    only one strike . . .  [and that] the two robbery counts amounted to only one robbery because they

9    alleged to be occurred simultaneously as part of the robbery . . . for purposes of sentencing under

10   the three strikes law."  Id. at 424.  Petitioner stated that he found this to be untrue after conducting

11   his own legal research.  Id.  Petitioner then argued that his plea should be withdrawn because it

12   was not supported by a factual basis.  Id. at 425.  He asserted that even though he arguably "had

13   the intent to commit robbery against the Wells Fargo bank, [he] may not have the same intent to

14   commit robberies against individualized (sic) victims presented (sic) at the bank."  Id.

15        On July 15, 2011, at petitioner's sentencing proceedings, Judge Burger-Plavan stated that

16   petitioner did "not have standing to be filing things on his own behalf" since he was represented

17   by an attorney.  Lod. Doc. 23, RT, 1236.  She then stated that she "advised [petitioner]

18   specifically that two of the offenses to which [he was] pleading were considered to be serious

19   felonies and strikes under California law and that they could be used to enhance [his] sentence for

20   any future felony convictions."  Id. at 1237.  The Judge then denied the motion to withdraw the

21   plea of no contest and sentenced plaintiff to an aggregate term of 6 years imprisonment.  Id. at

22   1237-1251.  Petitioner's counsel did not assert any argument for or make any statements

23   regarding petitioner's motion.  Id.

24   III.  Subsequent Filings of Appeals and Petitions

25        Petitioner filed numerous appeals in the Sacramento Superior Court, the California Court

26   of Appeal, Third Appellate District, and the California Supreme Court.  See Lod. Docs. 1-21.  In

27   the interest of judicial economy, only the relevant appeals and petitions are discussed below.  In

28   the interest of clarity, each matter is discussed in order of occurrence and includes case numbers

for reference.

On July 22, 2011, petitioner filed a notice of appeal in the California Court of Appeal, Third Appellate District.[2]  This action was assigned case number C068785.  See Lod. Docs. 1-4.

On January 3, 2012, petitioner, on his own behalf, filed his first habeas petition[3] in the Sacramento County Superior Court.  Lod. Doc. 12.  This action was assigned case number 12F00264.  Id.  His petition alleged that he received ineffective assistance of counsel and that he was denied the right to a jury trial, both of which derived from the denial of his motion to withdraw his plea.  Id.  Petitioner attached his trial court motion to withdraw his plea to his petition.  Id.  Petitioner indicated in his petition that he filed an appeal on this matter, case number C068785 with the California Court of Appeal, Third Appellate District, and that it was pending review.  Id.  Petitioner noted that the issues raised in his appeal were (1) due process of law violations, (2) ineffective assistance of counsel, and (3) the right to a trial by jury.  Id.  On March 1, 2012, the court dismissed his petition for lack of jurisdiction of both claims because they were raised in a pending appeal.  Id.

On April 30, 2012, petitioner, on his own behalf, filed a petition for writ of mandate, with the California Court of Appeal, Third Appellate District.  Lod. Doc. 17.  Petitioner attached both the habeas petition he filed in the Sacramento County Superior Court, case number 12F00264, and his trial court motion to withdraw his plea.  Id.  In his petition, petitioner asserted that his no-contest plea "barred double punishment" and that a reversal of his conviction is warranted because there was a miscarriage of justice based on ineffective assistance of counsel.  Id.  He also contends that the denial of his motion to withdraw his plea was a violation of due process and that his "plea agreement was neither voluntary or knowing."  Id.  On May 10, 2012, the Appellate

_____

[2]      The filing date of petitioner's notice of appeal was not provided in the record, but is relevant to understanding why petitioner's first habeas petition was denied.  See, infra, Lod. Doc. 12.  This date was found via the California Appellate Courts Case Information website's search function using case number C068785. 3rd Appellate District, Docket (Register of Actions), The People v. Clark, http://appellatecases.courtinfo.ca.gov/search.cfm?dist=3 (search by case number C068785; then follow the "Docket" hyperlink) (last visited Mar. 25, 2014).

[3]      The record indicates that petitioner filed four habeas petitions in the Sacramento Superior Court. Lod. Docs. 12-14.  Only his first petition is relevant to the present matter.  See Lod. Doc. 12.

1   Court construed petitioner's petition for writ of mandate as a petition for habeas corpus and

2   summarily denied the petition without comment or citation.  Id.

3          On June 12, 2012, petitioner's appellate counsel filed an opening brief in case number

4   C068785 with the California Court of Appeal, Third District, alleging that the trial court erred in

5   denying his requests to proceed in propria persona.  Lod. Doc. 1.  This brief did not raise any

6   issue concerning the denial of his motion to withdraw petitioner's plea.

7          On July 10, 2012, petitioner, on his own behalf, requested a certificate of probable cause

8   to appeal the validity of his underlying plea in the Sacramento County Superior Court, alleging in

9   part that his plea was entered as a result of mistake or ignorance.  Lod. Doc. 24, Clerk's

10  Transcript on Appeal ("CTII") (C071649), 101-102.  On July 23, 2012, Judge Burger-Plavan

11  denied this request.  Id. at 102.

12         On August 1, 2012, petitioner, on his own behalf, filed a petition for habeas corpus in the

13  California Supreme Court.  Lod. Doc. 19.  Petitioner's filing indicated that he previously filed a

14  petition in the Sacramento County Superior Court raising claims of "ineffective assistance of

15  counsel" and "right to a trial by jury," which was dismissed on March 1, 2012.  Id.  This

16  corresponds with his first state habeas petition, case number 12F00264.  In petitioner's first claim,

17  he alleged that "to plea to 2-strikes under poor counsel is a 'Fundamental Miscarriage Of Justice,'

18  consequentially, it is extremely sever (sic) to recieve (sic) strike 3 punishment for future

19  references."  Id.  In petitioner's second claim, he alleged that "[d]ue to the accumulation of Penal

20  Codes for robbery, it's impossible to receive punishment for P.C. 211[, robbery], when there is a

21  due process violation of the petitioner's plea agreement."  Id.  He also asserted that "[a] plea

22  agreement 'presupposes fairness in securing an agreement between an accused and the state it

23  must be voluntary and knowingly.'"  Id.  On October 31, 2012, the California Supreme Court

24  summarily denied the petition without comment or citation.  Id.

25         On December 11, 2012, the Appellate Court denied petitioner's appeal in case number

26  C068785, stating that he "silently accepted his counsel's assistance all the way through to the jury

27  /////

28  /////

6

1    trial." <u>People v. Clark</u>, No. C068785, 2012 WL 6125760 (Cal. App. 3rd Dec. 11, 2012).[4]

2             On December 28, 2012, petitioner's appellate counsel filed a <u>Wende</u> brief with the

3    California Court of Appeal, Third District, requesting that the court make an independent review

4    of the record.  Lod. Doc. 7.  This action was assigned case number C071649.  <u>Id.</u>

5             On January 17, 2013, petitioner's appellate counsel filed with the California Supreme

6    Court a petition for review of the Appellate Court's decision in case number C068785.  Lod. Doc.

7    5.  This petition also failed to raise any issue concerning the denial of petitioner's motion to

8    withdraw his plea.

9             On January 28, 2013, petitioner, on his own behalf, filed a supplemental brief with the

10   Appellate Court in case number C071649, which did not clearly set forth specific claims.  Lod.

11   Doc. 8.  However, petitioner's brief contained a section titled "Double Jeopardy," in which he

12   stated that his motion to withdraw his plea was denied and that he still wants to withdraw his plea.

13   <u>Id.</u> at 7-8.

14            On February 20, 2013, the California Supreme Court denied the petition for review of the

15   appellate decision in case number C068785 without comment or citation.  Lod. Doc. 6.

16            On March 27, 2013, the Appellate Court denied his appeal in case number C071649,

17   construing the action as being an appeal from the trial court's order modifying his conduct

18   credits.[5]  Lod. Doc. 9.  The court did not discuss petitioner's contentions regarding his motion to

19   withdraw his plea or double jeopardy.  On May 19, 2013, petitioner, on his own behalf, filed a

20   petition for review of this decision with the California Supreme Court, in which he asserted that

21   the trial court erred and "deprive[d him] of double jeopardy . . . by denying [his] motion to

22   withdraw the no contest plea at sentencing on the ground that it was filed by defendant rather than

23   trial counsel."  Lod. Doc. 10.  On June 12, 2013, the California Supreme Court denied the petition

24   without comment or citation.  Lod. Doc. 11.

25   _____

26   [4]     This decision was lodged by respondent, but page 6, which contained the majority of the
     court's analysis, was omitted.  <u>See</u> Lod. Doc. 4.

27   [5]     Petitioner did file several other appeals in the Sacramento County Superior Court, which
     included issues pertaining to his conduct credits, but none of these appeals raised claims that are

28   relevant here.  <u>See</u> Lod. Doc. 24, CTII.

1   <u>DISCUSSION</u>

2         Petitioner arguably makes three claims in his petition for habeas corpus.  ECF No. 1, 3-4.

3   First, he alleges that his motion to withdraw his plea was improperly denied.  Second, he contends

4   that, at his trial, the prosecution failed to disclose evidence favorable to him.  Third, he claims

5   that he was denied effective assistance of counsel.  However, petitioner's claims and scattered

6   appeals create more than three issues for review.  As construed by this Court, the present petition

7   asserts that (1) the prosecution at petitioner's trial failed to disclose exculpatory evidence, (2)

8   petitioner's plea violated double jeopardy, (3) petitioner's plea was involuntary due to ineffective

9   assistance of counsel, (4) petitioner's plea was not voluntary and knowing in violation of

10  petitioner's due process rights, (5) a probation report constituted cruel and unusual punishment,

11  and (6) petitioner received ineffective assistance of counsel.

12  I. <u>AEDPA Standards</u>

13        The statutory limitations of federal courts' power to issue habeas corpus relief for persons

14  in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

15  Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

16
17          An application for a writ of habeas corpus on behalf of a person in
        custody pursuant to the judgment of a State court shall not be
        granted with respect to any claim that was adjudicated on the merits
18      in State court proceedings unless the adjudication of the claim-

19      (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
20      determined by the Supreme Court of the United States; or

21      (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
22      State court proceeding.

23        As a preliminary matter, the Supreme Court has recently held and reconfirmed "that §

24  2254(d) does not require a state court to give reasons before its decision can be deemed to have

25  been 'adjudicated on the merits.'"  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011).

26  Rather, "when a federal claim has been presented to a state court and the state court has denied

27  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

28  of any indication or state-law procedural principles to the contrary."  <u>Id.</u> at 784-785 (citing <u>Harris</u>

8

1    v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when

2    it is unclear whether a decision appearing to rest on federal grounds was decided on another

3    basis)).  "The presumption may be overcome when there is reason to think some other

4    explanation for the state court's decision is more likely."  Id. at 785.

5         The Supreme Court has set forth the operative standard for federal habeas review of state

6    court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an *unreasonable*

7    application of federal law is different from an *incorrect* application of federal law.'"  Harrington,

8    supra, 131 S. Ct. at 785 (citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000)).

9    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

10   'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786

11   (citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004)).

12        Accordingly, "a habeas court must determine what arguments or theories supported or . . .

13   could have supported[] the state court's decision; and then it must ask whether it is possible

14   fairminded jurists could disagree that those arguments or theories are inconsistent with the

15   holding in a prior decision of this Court."  Id.  "Evaluating whether a rule application was

16   unreasonable requires considering the rule's specificity.  The more general the rule, the more

17   leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the

18   stringency of this standard, which "stops short of imposing a complete bar of federal court

19   relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

20   cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

21   was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003)).

22        The undersigned also finds that the same deference is paid to the factual determinations of

23   state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

24   subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

25   decision that was based on an unreasonable determination of the facts in light of the evidence

26   presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

27   2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

28   factual error must be so apparent that "fairminded jurists" examining the same record could not

1    abide by the state court factual determination.  A petitioner must show clearly and convincingly

2    that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.

3    969, 974 (2006).

4          The habeas corpus petitioner bears the burden of demonstrating the objectively

5    unreasonable nature of the state court decision in light of controlling Supreme Court authority.

6    Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

7    show that the state court's ruling on the claim being presented in federal court was so lacking in

8    justification that there was an error well understood and comprehended in existing law beyond

9    any possibility for fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  "Clearly

10   established" law is law that has been "squarely addressed" by the United States Supreme Court.

11   Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008).  Thus, extrapolations of

12   settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

13   Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state

14   sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

15   prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

16   established law when spectators' conduct is the alleged cause of bias injection).  The established

17   Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other

18   controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

19   federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

20          The state courts need not have cited to federal authority, or even have indicated

21   awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S. Ct.

22   at 365.  However, where the state courts have not addressed the constitutional issue in dispute in

23   any reasoned opinion, the federal court will independently review the record in adjudication of

24   that issue.  "Independent review of the record is not de novo review of the constitutional issue,

25   but rather, the only method by which we can determine whether a silent state court decision is

26   objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

27          Finally, when a state court decision on a petitioner's claims rejects some claims but does

28   not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal,

10

1    that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___, 133 S.

2    Ct. 1088, 1091 (2013).  However, if the state courts unequivocally have not adjudicated the merits

3    of the federal issue, no AEDPA deference is given; the issue is reviewed *de novo* under general

4    principles of federal law.  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).

5    II.  Failure to Disclose Evidence

6          In his second claim, petitioner asserts that his "conviction [was] obtained by the

7    unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the

8    defendant," which would be a violation of the government's duty to disclose exculpatory

9    information under Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963).  ECF No.

10   1, 3.  Petitioner contends that the "District Attorney withheld exculpatory evidence in [his]

11   favor."  Id.  In particular, petitioner states that dispatch records, phone records, and other

12   unspecified evidence were withheld.  Id.  Petitioner also asserts that the prosecution marked

13   evidence and allowed a witness to take home an unspecified item of evidence.  Id.

14         Respondent contends that petitioner's Brady claim is unexhausted, but recognizes that the

15   court may rule on an unexhausted claim if the ultimate result is a denial on the merits.  See 28

16   U.S.C. § 2254(b)(2).  Thus, in addition to the exhaustion assertion, respondent  alleges that this

17   claim is both moot and substantively meritless.  ECF No. 26, 26-29.

18         In arguing that petitioner's Brady claim is moot, respondent makes two arguments.  First,

19   respondent asserts that the propriety of the prosecutor's conduct during the first trial no longer

20   presents a live controversy capable of being remedied in this habeas proceeding because

21   petitioner has already served the one-year term for what he was convicted during his trial.  Id. at

22   26-27.  Second, respondent claims that because petitioner pleaded guilty, he may not raise claims

23   related to the deprivation of constitutional rights that occurred prior to the guilty plea.  Id.  The

24   court need only deal with the latter argument since the Brady claim on the merits lacks substance.

25   See alternative Brady analysis on the merits.  However, the analysis begins with the guilty plea.

26         "When a criminal defendant has solemnly admitted in open court that he is in fact guilty

27   of the offense with which he is charged, he may not thereafter raise independent claims relating to

28   the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  Tollett

11

1   v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L.Ed.2d 235 (1973).  Aside from challenges

2   to the voluntary and intelligent character of the plea, collateral attacks on pre-plea constitutional

3   errors are generally foreclosed by the entry of a guilty plea.  Id.; see also United States v. Broce,

4   488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become

5   final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to

6   whether the underlying plea was both counseled and voluntary").

7         Although the Ninth Circuit previously held that a Brady claim could be asserted to attack

8   the voluntariness of the plea, see Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995),

9   the Supreme Court has since held otherwise.   In United States v. Ruiz, 536 U.S. 622, 629, 122 S.

10  Ct. 2450 (2002), the Supreme Court did hold that withholding of impeachment material did not

11  give rise to a cognizable Brady claim in the context of a guilty plea.  Exculpatory material, of

12  course, is treated no differently for Brady purposes.  In United States v. Bagley, 473 U.S. 667,

13  105 S. Ct. 3375 (1985), the Supreme Court specifically rejected any distinction between

14  exculpatory and impeachment evidence, finding them both to fall within Brady as "evidence

15  favorable to an accused."  Id. at 676, quoting Brady, 373 U.S. at 87, 83 S. Ct. at 1196, and citing

16  Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972).   Cf. Torres v. Prosper,

17  2008 WL 6665286, * 8 (E.D. Cal. Dec. 12, 2008) (discussing potential distinction between

18  exculpatory and impeachment evidence in regard to guilty plea) remanded on other grounds, 2009

19  WL 1338145 (E.D. Cal. 2010).

20        Therefore, in light of Ruiz and Bagley, whether the evidence proffered by petitioner is

21  viewed as exculpatory or impeachment material, petitioner's Brady claim fails.  The state court's

22  decision was not contrary to, or an unreasonable application of, clearly established federal law.

23        Even if Brady could be invoked to invalidate a guilty plea, or the claim is directed at the

24  misdemeanor trial conviction, petitioner's conclusion  is without merit.  In Brady, the United

25  States Supreme Court held that "the suppression by the prosecution of evidence favorable to an

26  accused upon request violates due process where the evidence is material either to guilt or to

27  punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  The

28  obligation extends to favorable evidence that was not requested by the defense.  See Kyles v.

1  Whitley, 514 U.S. 419, 432–34, 115 S. Ct. 1555, 131 L.Ed.2d 490 (1995); Carriger v. Stewart,

2  132 F.3d 463, 479 (9th Cir. 1997) (en banc).  "[T]he standard for materiality . . . in a case

3  involving a guilty plea is whether there is a reasonable probability that but for the failure to

4  disclose the Brady material, the defendant would have refused to plead and would have gone to

5  trial."  Sanchez, 50 F.3d at 1454.  "[T]he test for whether the defendant would have chosen to go

6  to trial is an objective one that centers on the likely persuasiveness of the withheld information."

7  Id. (quotation and citation omitted).

8        Petitioner has not shown the elements of a Brady violation.  First, petitioner fails to

9  present any argument or factual assertion in support of his claim.  He merely states that the

10 prosecution failed to disclose evidence that was favorable to him without asserting how the

11 evidence would have strengthened his case or made him refuse to enter his no contest plea.

12 Petitioner did, however, attach several documents from the Rocklin Police Department and the

13 Sacramento Sheriff's Department that allegedly were not disclosed by the prosecution.  ECF No.

14 1, 32-56.  Some of these documents contain handwritten notes, presumably made by petitioner.

15       On a document, completed by Rocklin Police Officer John Constable, who had pursued

16 the get-away car from the Rocklin bank robbery to Sacramento, petitioner noted that the officer

17 was "unable to identify (including race) either of the subjects in the vehicle."  Id. at 33.  Petitioner

18 noted on another report, completed by Sacramento Sheriff Deputy J. Riggs, that a witness, Shawn

19 Goutermount, stated that he saw individuals with hats and bandanas.  Id. at 35.  It is unclear if

20 there is other information in these documents that petitioner believes is relevant, but this Court

21 finds no evidence within these documents that is clearly exculpatory.

22       Petitioner also attached his reply brief to the Court of Appeals in case number C068785 to

23 his petition.  ECF No.1, 10-18.  In this brief, petitioner's appellate counsel states that "[t]he

24 evidence presented that connected [petitioner] to the car was a car key located in a shed where

25 [petitioner] had been, documents with [petitioner's] name on them which were found inside the

26 car, and the testimony of Jasmin Hinton."  Id. at 11.

27       Based on the evidence adduced at trial, the evidence that the prosecution allegedly failed

28 to disclose was in no way persuasive enough to establish a reasonable probability that but for the

1   failure to disclose material, petitioner would have refused to plead no contest.  Reports indicating

2   that officers on the scene could not make clear descriptions of the suspect cannot reasonably

3   trump the evidence adduced at trial tying petitioner to the getaway car.  Thus, petitioner's <u>Brady</u>

4   claim should be denied.

5   III.  <u>Violations Relating to Petitioner's Plea</u>

6        Petitioner's first claim asserts that his "[c]onviction [was] obtained by a jury verdict and a

7   [no contest] plea which was unlawfully induced or not made voluntarily with understanding the

8   plea." ECF No. 1, 3.  Petitioner then stated that he "filed a motion to withdraw the no-contest

9   plea that was denied and violated my right to withdraw . . . according to the 14th Amendment."

10  <u>Id.</u>

11       Respondent's answer interprets this claim as a contention "that the trial court should have

12  granted [petitioner's] motion to withdraw his no-contest plea on the basis that double jeopardy

13  barred any retrial on the pled-to offenses." ECF No. 26, 18.  Respondent then asserts that the

14  state court's rejection of a double jeopardy challenge to petitioner's no-contest pleas was not

15  unreasonable or contrary to Supreme Court precedent.  <u>Id.</u>  Respondent alleges that petitioner

16  "exhausted this claim during the second appellate proceeding." <u>Id.</u> at 19.

17       It is difficult for this Court to fully agree with respondent's interpretation of petitioner's

18  claim.  First, petitioner's claim before this Court makes no mention of double jeopardy.  Rather, it

19  seems to state that the trial court's denial of petitioner's motion to withdraw his guilty plea

20  violated his right to due process.  Second, it is clear that respondent's interpretation of the record

21  is inaccurate.  Respondent claims that:

22           Petitioner <u>first</u> raised this [double jeopardy] claim in his pro se
         Opening Brief before the state appellate court in his second appeal.

23           (LD # 8 at 7-9.)  The state appellate court implicitly rejected it
         when, "[h]aving undertaken an examination of the entire record," it

24           found "no arguable error that would result in a disposition more
         favorable to the defendant."  (LD #9 at 4.)  Petitioner renewed this

25           claim in his pro se Petition for Review, which was summarily
         denied by the California Supreme Court.  (LD #10 at 2-3, #11.)

26           Petitioner <u>repeated</u> this claim in his first habeas petition to the
         appellate court, which was summarily denied. (LD #17.)  Although

27           Petitioner subsequently omitted any double jeopardy challenge in
         his first habeas petition to the California Supreme Court, merely

28           claiming that the plea was a "miscarriage of justice" under state law

1    (LD #19), Respondent nevertheless submits that Petitioner
     exhausted this claim during the second appellate proceeding.

2

3    ECF No. 26, 19 (emphasis added).

4         As discussed above, petitioner's first habeas petition to the appellate court was filed on

5    April 30, 2012, well before petitioner filed his supplemental brief with the Appellate Court in

6    case number C071649, on January 28, 2013.  See Lod. Docs. 8 and 17.  Although petitioner stated

7    in his first habeas petition that he "entered a no contest plea after a jury trial verdict . . . which

8    barred double punishment," petitioner's primary contentions were that a reversal of his conviction

9    is warranted because there was a miscarriage of justice based on ineffective assistance of counsel,

10   that the denial of his motion to withdraw his plea was a violation of due process, and that his

11   "plea agreement was neither voluntary or knowing."  Id.  Thus, respondent's interpretation of this

12   petition as containing a "repeated" double jeopardy claim is probably incorrect and ignores the

13   majority of petitioner's assertions.

14        Furthermore, respondent's claim that in his habeas petition to the California Supreme

15   Court petitioner "omitted any double jeopardy claim" and "merely" asserted that "the plea was a

16   'miscarriage of justice' under state law" is also an inaccurate assessment of the record.  Again,

17   the habeas petition filed with the California Supreme Court was filed on August 1, 2012, before

18   petitioner filed his supplemental brief with the Appellate Court in case number C071649.  See

19   Lod. Docs. 8 and 19.  As discussed above, each of petitioner's habeas petitions—that are relevant

20   here—made allegations pertaining to the denial of effective assistance of counsel and the right to

21   a jury trial deriving from the denial of his motion to withdraw his plea.  Id.  Furthermore, both

22   habeas petitions to the state Appellate Court and Supreme Court stated that there was a

23   miscarriage of justice based on ineffective assistance of counsel and that the denial of his motion

24   to withdraw his plea was a violation of due process because the plea was not voluntary or

25   knowing.

26        Nonetheless, because petitioner seemingly made double jeopardy claims in his first state

27   habeas petition and during his appeal, this Court will address that claim on the basis of double

28   jeopardy, as interpreted by respondent.  However, this Court construes petitioner's claim as being

15

based on a violation of his right to effective assistance of counsel and due process.[6]  Although respondent does not waive the exhaustion requirement[7] as to any additional claims construed by this Court, ECF No. 26, 1, the court may rule on an unexhausted claim if the ultimate result is a denial on the merits.  See 28 U.S.C. § 2254(b)(2).  As set forth below, this Court recommends that this claim, as interpreted by respondent and construed by this Court, be denied on the merits.

A.  Double Jeopardy

Respondent asserts that petitioner's double jeopardy claim fails because it was not unreasonable or contrary to clearly established Supreme Court precedent for the California Court of Appeal and the California Supreme Court to reject the claim.  ECF No. 26, 16.  However, as petitioner notes, there is no reasoned state court opinion on the merits of this issue.  Id. at 19.  Thus, this court must independently find whether the decision violates clearly established law as announced by the Supreme Court.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  Double jeopardy can occur in three situations: (1) a second prosecution for the same offense after acquittal; (2) a

---

[6]     While pro se pleadings are liberally construed, see Haines v. Kerner, 404 U.S. 519, 520–21, 92 S. Ct. 594, 595–96 (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988), this Court's interpretation of petitioner's claims clearly derives from the operative petition and petitioner's state court filings.

[7]     The exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings.  See Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198 (1982); 28 U.S.C. § 2254(b); see also Woodford v. Ngo, 548 U.S. 81, 92 (2006).  A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985), cert. denied, 478 U.S. 1021, 106 S. Ct. 3336 (1986).  A petitioner is deemed to have exhausted state remedies if he makes a fair presentation of his federal claims to the state courts.  Peterson, 319 F.3d at 1155-56.  Fair presentation requires that a state's highest court has "a fair opportunity to consider [an appellant's constitutional claim] and to correct that asserted constitutional defect."  Picard v. Connor, 404 U.S. 270, 276, 92 S. Ct. 509 (1971); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (requiring that petitioner "alert" the state courts of the constitutional issues that are on appeal).  The record indicates that petitioner presented his claim, as interpreted by this Court, to the state courts, alerting them of the constitutional issues that were on appeal.  However, because this Court recommends that petitioner's claims be denied, whether they are exhausted is not at issue.

second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); see also Turner v. Calderon, 281 F.3d 851, 889 (9th Cir. 2002) (quoting Staatz v. Dupnik, 789 F.2d 806, 808 (9th Cir. 1986)).  "Such protections are intended to insure that 'the State with all its resources and power [is] not . . . allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'"  Turner, 281 F.3d at 889 (quoting Green v. United States, 355 U.S. 184, 187-88, 78 S. Ct. 221 (1957)).

Here, petitioner's first trial resulted in a mistrial, rather than an acquittal or a conviction. The principle of double jeopardy protection following an acquittal generally[8] does not apply as a bar to a second prosecution where, as here, the trial court has declared a mistrial because the jury could not reach a unanimous verdict.  Hoyle v. Ada County, 501 F.3d 1053, 1060 (9th Cir. 2007); see Richardson v. United States, 468 U.S. 317, 324, 104 S. Ct. 3081 (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause."); see also United States v. Scott, 437 U.S. 82, 92, 98 S. Ct. 2187 (1978) ("When a trial court declares a mistrial, it all but invariably contemplates that the prosecutor will be permitted to proceed anew notwithstanding the defendant's plea of double jeopardy").  Also, petitioner's guilty plea resulted in his only conviction for the crimes of which he was charged. Convictions after a mistrial do not violate the double jeopardy clause.  See Oregon v. Kennedy, 456 U.S. 667, 672, 102 S. Ct. 2083 (1982)).  Thus, petitioner has not been improperly subjected to a second prosecution or subjected to multiple punishments as a result of his no contest plea.

Petitioner's double jeopardy claim may also be read as an allegation that the failure to withdraw his no contest plea, due to the additional "strike," may result in another punishment for

---

[8]     Double jeopardy protection may remain after a mistrial in certain cases, none of which are applicable here.  See United States v. Jorn, 400 U.S. 470, 485, 91 S. Ct. 547 (1971) (plurality opinion) (double jeopardy protects defendants against governmental actions intended to provoke mistrial requests subjecting them to the burdens of multiple prosecutions); see also United States v. Dinitz, 424 U.S. 600, 611, 96 S. Ct. 1075 (1976) (double jeopardy bars retrials caused by certain bad-faith conduct by a judge or prosecutor).

1   the same offense in the future.   It is worth noting that the United States Supreme Court has held

2   that double jeopardy implications are inapplicable to sentencing proceedings because the

3   determinations at issue do not place a defendant in jeopardy for an offense.  Monge v. California,

4   524 U.S. 721, 727–28, 118 S. Ct. 2246 (1998) (citing Nichols v. United States, 511 U.S. 738,

5   747, 114 S. Ct. 1921 (1994) (noting that repeat-offender laws "'penaliz[e] only the last offense

6   committed by the defendant'")).  The Court has also held that recidivist laws do not violate

7   double jeopardy because "the enhanced punishment imposed for the [present] offense 'is not to be

8   viewed as . . . [an] additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for

9   the latest crime, which is considered to be an aggravated offense because a repetitive one.'"

10  Witte v. United States, 515 U.S. 389, 400, 115 S. Ct. 2199 (1995) (quoting Gryger v. Burke, 334

11  U.S. 728, 732, 68 S. Ct. 1256 (1948)); see United States v. Kaluna, 192 F.3d 1188, 1198–99 (9th

12  Cir.1999) (en banc) (quoting Witte, 515 U.S. 389).

13       Regardless of how petitioner's double jeopardy claim is interpreted, it is without merit and

14  should be denied.

15       B.  Ineffective Assistance of Counsel

16       Petitioner claims that he was deprived of effective assistance of counsel.  Petitioner's

17  contention relies entirely on the claim that his plea was involuntary and that he did not know or

18  understand the consequences of the plea because his trial counsel gave him incorrect advice.

19  Again, there is no reasoned state court opinion on the merits of this issue.

20       Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-

21  bargaining process.  Padilla v. Kentucky, 559 U.S. ___, ___, 130 S. Ct. 1473, 1486 (2010).

22  During plea negotiations defendants are "entitled to the effective assistance of competent

23  counsel." McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441 (1970).  A defendant who

24  enters a guilty plea on the advice of counsel may generally only attack the voluntary and

25  intelligent character of the guilty plea by showing that the advice he received from counsel was

26  not within the range of competence demanded of attorneys in criminal cases.  See Hill v.

27  Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366 (1985); Tollett v. Henderson, 411 U.S. 258, 267, 93 S.

28  Ct. 1602 (1973); United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988).  In Hill, the Court

18

1   held "the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on

2   ineffective assistance of counsel."  474 U.S. at 58.  Thus, to prevail on a claim of ineffective

3   assistance of counsel arising out of his plea process, petitioner must show (1) that his trial

4   counsel's representation fell below an objective standard of reasonableness, and (2) that there is a

5   reasonable probability that, but for counsel's unprofessional errors, the result of the plea process

6   would have been different because he would not have pleaded guilty and would have insisted on

7   going to trial.  <u>Hill</u>, 474 U.S. at 57-59 (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694,

8   104 S. Ct. 2052 (1984)).

9       Under the first prong of the <u>Strickland</u> test, "[r]eview of counsel's performance is highly

10  deferential and there is a strong presumption that counsel's conduct fell within the wide range of

11  reasonable representation."  <u>United States v. Ferreira-Alameda</u>, 815 F.2d 1251, 1253 (9th Cir.

12  1986).  A counsel's "[g]ross mischaracterization of the likely outcome of the plea, combined with

13  erroneous advice on the possible effects of going to trial, falls below the level of competence

14  required for a defense attorney."  <u>Torrey v. Estelle</u>, 842 F.2d 234, 237 (9th Cir. 1988).  However,

15  a mere inaccurate prediction, standing alone, would not constitute ineffective assistance."  <u>Iaea v.</u>

16  <u>Sunn</u>, 800 F.2d 861, 865 (9th Cir. 1986).

17      The second prong of the <u>Strickland</u> test contains an objective component in that the court

18  is not bound to accept a defendant's unadorned subjective conclusion that he would not have pled

19  guilty; something in the record must give rise to a finding of a reasonable probability.  In <u>United</u>

20  <u>States v. Keller</u>, 902 F.2d 1391, 1394 (9th Cir. 1990), the Ninth Circuit found that a defendant's

21  never denying his acts and never suggesting that he was not guilty indicated there was not a

22  reasonable probability that but for error, the defendant would not have pled guilty.

23      Petitioner asserted in his motion to withdraw his plea that his attorney "assured [him] that

24  although the two robbery convictions deem two strikes under California law but in reality, it was

25  only one strike . . .  [and that] the two robbery counts amounted to only one robbery because they

26  alleged to be occurred simultaneously as part of the robbery . . . for purposes of sentencing under

27  the three strikes law."  Lod. Doc. 22, CT, 424.  He also alleged that even though he arguably "had

28  the intent to commit robbery against the Wells Fargo bank, [he] may not have the same intent to

1    commit robberies against individualized (sic) victims presented (sic) at the bank."  Id.

2    Petitioner's claims present issues with both prongs of the Strickland test that enable petitioner to

3    carry his burden.

4    As for the first prong of the Strickland test, petitioner relies solely on his contention that

5    his trial counsel grossly mischaracterized the likely outcome of his plea, failing to assert that

6    counsel gave him erroneous advice on the possible effects of going to trial.  Regardless, and even

7    assuming that counsel's advice regarding the outcome of the plea was inaccurate,[9] the prediction

8    concerned only collateral consequences of petitioner's plea that did not affect his sentence under

9    the plea.  "This is not a case where the defendant was erroneously promised a sentence he did not

10   receive.  Defendant received the benefit of his bargain[, accepting a 6 year sentence rather than

11   going to trial where he could potentially receive a sentence over 13 years].  Failure to advise him

12   of a collateral penalty cannot be held to be below an objective standard of reasonableness."

13   Torrey, 842 F.2d at 237 (citations omitted); see Lod. Doc. 23, RT, 1226, 1237-1251.

14   This conclusion is reinforced by the case law which requires a gross disparity from what

15   counsel advised concerning sentence and what the defendant actually received before a defendant

16   is prejudiced by ineffective assistance.  Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1990); see

17   Sophantharong v. Palmateer, 378 F.3d 859, 868–869 (9th Cir. 2004) (incorrect prediction that

18   Oregon's "Second Look Statute," awarding a reduction in sentence of up to five years, could

19   apply was not a gross mischaracterization of sentence); Donganiere v. United States, 914 F.2d

20   165, 168 (9th Cir. 1990) (prediction of not more than a 12 year sentence which proved erroneous

21   when defendant was actually sentenced to 15 years incarceration on one count and a 20 year

22   probation term on another—not a gross mischaracterization); United States v. Perrigo–Haddon,

23   221 Fed. Appx. 619 (9th Cir. 2007) (failure to advise of a potential three year probation as

24   opposed to a one year terms of supervised release not a gross mischaracterization.

25   Because petitioner failed to carry his burden of proving that his counsel grossly

26   mischaracterized the likely outcome of his plea and failed to assert that his counsel rendered

27

28   [9]    The record does not clearly establish whether counsel's advice regarding California's "Three Strikes Law" was inaccurate, but that issue need not be decided here.

20

1    erroneous advice on the possible effects of going to trial, he has not shown that counsel's

2    representation fell below an objective standard of reasonableness.  This alone supports a finding

3    that petitioner's ineffective assistance of counsel claim should be denied, but, as discussed below,

4    petitioner also failed to carry his burden at step two of the <u>Strickland</u> test.

5          As for the second prong of the <u>Strickland</u> test, nothing in the record, other than

6    petitioner's motion to withdraw his plea, indicates a reasonable probability that petitioner would

7    not have entered his plea had his counsel informed him that his plea would result in two "strikes."

8    As discussed by the trial judge in denying petitioner's motion to withdraw his plea, petitioner was

9    advised upon entering his plea that the two felony offenses to which he pleaded no contest to

10   were considered serious felonies and strikes under California law and that they could be used to

11   enhance his sentence for any future felony convictions.  <u>See</u> Lod. Doc. 23, RT, 1227, 1237.

12   Petitioner did not object or show any confusion regarding this issue during the proceeding.  <u>Id.</u>

13   Also, petitioner never denied his acts or suggested that he was not guilty; indeed, he essentially

14   concedes that he robbed the bank (as opposed to the teller).  Thus, the record does not establish a

15   reasonable probability that, but for counsel's alleged error, petitioner would have elected to go to

16   trial.

17         Accordingly, petitioner's ineffective assistance of counsel claim should be denied.

18         C.  <u>Due Process</u>

19         Petitioner claims that his plea was not voluntary and intelligent, and thus was in violation

20   of his due process rights.  ECF No. 1, 3.  Petitioner's contention relies on the claims that his trial

21   counsel gave him incorrect advice and, as discussed above, that the prosecution failed to disclose

22   exculpatory evidence.

23         Due process guarantees under the Fifth Amendment require that a defendant's guilty plea

24   be voluntary and intelligent.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969).

25   Before a court may accept a defendant's guilty plea, the defendant must be advised of the "range

26   of allowable punishment" that will result from his plea.  <u>U.S. ex rel. Pebworth v. Conte</u>, 489 F.2d

27   266, 268 (9th Cir. 1974).  Also, a plea of guilty is voluntary "only if it is 'entered by one fully

28   aware of the direct consequences' of his plea."  <u>Carter v. McCarthy</u>, 806 F.2d 1373, 1375 (9th

1   Cir. 1986) (quoting Brady v. United States, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)).

2         "Where, as here, a defendant is represented by counsel during the plea process and enters

3   his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's

4   advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v.

5   Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366 (1985) (quoting McMann v. Richardson, 397 U.S. 759,

6   771, 90 S. Ct. 1441 (1970)).  Petitioner faces a high hurdle in seeking to overturn a plea on

7   collateral review.  As the Supreme Court held in Mabry:

8
9           It is well settled that a voluntary and intelligent plea of guilty made
            by an accused person, who has been advised by competent counsel,
            may not be collaterally attacked.  It is also well settled that plea
10          agreements are consistent with the requirements of voluntariness
            and intelligence-because each side may obtain advantages when a
11          guilty plea is exchanged for sentencing concessions, the agreement
            is no less voluntary than any other bargained-for exchange.  It is
12          only when the consensual character of the plea is called into
            question that the validity of a guilty plea may be impaired.   In
13          Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d
            747 (1970), we stated the applicable standard:
14
            [A] plea of guilty entered by one fully aware of the direct
15          consequences,   including   the   actual   value   of   any
            commitments made to him by the court, prosecutor, or his
16          own counsel, must stand unless induced by threats (or
            promises   to   discontinue   improper   harassment),
17          misrepresentation (including unfulfilled or unfulfillable
            promises), or perhaps by promises that are by their nature
18          improper   as   having   no   proper   relationship   to   the
            prosecutor's business (e.g. bribes).

19   Mabry v. Johnson, 467 U.S. 504, 508-09, 104 S. Ct. 2543 (1984) (internal quotation marks and

20   citations omitted) (disapproved on other grounds in Puckett v. United States, 556 U.S. 129, 138 n.

21   1, 129 S. Ct. 1423 (2009)).

22         The Ninth Circuit, "in harmony with other circuits, has held that although a defendant is

23   entitled to be informed of the direct consequences of the plea, the court need not advise him of all

24   the possible collateral consequences.[10]  Torrey, 842 F.2d at 235; see also United States v.

25   Littlejohn, 224 F.3d 960, 971 (9th Cir. 2000).  "The distinction between a direct and collateral

26

27   _____
     [10]      The Supreme Court acknowledged the circuit courts' use of the direct and collateral
28   consequence distinction, but has declined to specifically adopt it.  Chaidez v. U.S., ___ U.S. ___,
     ___, 133 S. Ct 1103, 1111-1112 (2013).

                                            22

1    consequence of a plea turns on whether the result represents a definite, immediate and largely

2    automatic effect on the range of the defendant's punishment."  Id. at 236 (quotations and citations

3    omitted).  "[W]here the consequence is contingent upon action taken by an individual or

4    individuals other then (sic) the sentencing court—such as another governmental agency or the

5    defendant himself—the consequence is generally 'collateral.'"  Littlejohn, 224 F.3d at 965.

6    Collateral consequences include the fact there is a possibility of a future sentence enhancement

7    based on the guilty plea.  United States v. Garrett, 680 F.2d 64, 65-66 (9th Cir. 1982).

8          A habeas petitioner bears the burden of establishing that his guilty plea was not knowing

9    and voluntary.  Parke v. Raley, 506 U.S. 20, 24, 113 S. Ct. 517 (1992).  Petitioner's due process

10   claim is similar to his claim of ineffective assistance of counsel.  However, just as the facts did

11   not support the ineffective counsel claim, they do not support the claim of a due process violation.

12         First, petitioner was clearly informed of the direct consequences of his plea—that it would

13   result in 6 years imprisonment.  Petitioner does not argue that he was not fully aware of the direct

14   consequences of his plea.  Petitioner also does not claim that his plea was induced by threats,

15   harassment, or improper promises.  He merely asserts that his trial counsel, not the court,

16   misrepresented the indirect or collateral consequences of his plea.

17         Even though petitioner was not entitled to being informed of the possibility that his plea

18   could result in future sentence enhancements, petitioner's trial judge informed him of those

19   collateral consequences during plea proceedings.  While the judge did not expressly state that the

20   plea would result in "two strikes," she informed petitioner that "the offenses to which [he pled]

21   are considered to be serious felonies, or what is referred to in California as strikes, those can be

22   used to enhance [his] sentence for any future felony convictions that [he may] receive."  Lod.

23   Doc. 23, RT, 1224-1227 (emphasis added).  Thus, petitioner was made aware that pleading to

24   multiple felonies would result in multiple strikes.  Furthermore, petitioner claimed in his motion

25   to withdraw his plea that his counsel gave him the inaccurate information before his plea

26   proceedings.  See Lod. Doc. 22, CT, 424.  Thus, to the extent that petitioner's counsel may have

27   misrepresented the indirect consequences of his plea, that error was cured by the trial judge's

28   advisement during the plea proceedings.

1    Second, to the extent that petitioner contends that his plea was not voluntary because the

2    prosecution failed to disclose exculpatory information at trial, prior to his plea, that claim has

3    been found to lack merit.  See, supra, Section I.  The evidence that was allegedly withheld could

4    not reasonably be said to have caused petitioner to enter his plea involuntarily or without

5    adequate knowledge as it was not clearly exculpatory and was overcome by the evidence adduced

6    at trial.  Id.

7    Petitioner asserts no other basis for his contention that his plea was not voluntary and

8    intelligent.  Therefore, his due process claim should be denied.

9    IV.  Cruel and Unusual Punishment

10   Also in his second claim, petitioner asserts that the prosecution "allow[ed a] probation

11   report to maliciously slander [his] name violating [his] constitutional rights under the 8th

12   Amendment."  ECF No. 1, 3.  Respondent contends that petitioner's Eighth Amendment claim is

13   unexhausted, but recognizes that the court may rule on an unexhausted claim if the ultimate result

14   is a denial on the merits.  See 28 U.S.C. § 2254(b)(2).  Thus, in addition to the exhaustion

15   assertion, petitioner alleges that this claim lacks any substantive merit.  ECF No. 26, 30-32.

16   The United States Supreme Court has held that the Eighth Amendment includes a "narrow

17   proportionality principle" that applies to terms of imprisonment.  See Harmelin v. Michigan, 501

18   U.S. 957, 996, 111 S. Ct. 2680 (1991) (Kennedy, J., concurring); see also Taylor v. Lewis, 460

19   F.3d 1093, 1097 (9th Cir. 2006).  However, successful challenges in federal court to the

20   proportionality of particular sentences are "exceedingly rare."  Solem v. Helm, 463 U.S. 277,

21   289-90, 103 S. Ct. 3001 (1983); see also Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004).

22   "The Eighth Amendment does not require strict proportionality between crime and sentence.

23   Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."

24   Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring) (citing Solem, 463 U.S. 277).  In Lockyer

25   v. Andrade, 538 U.S. 63, 123 S. Ct. 1166 (2003), the United States Supreme Court found that in

26   addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly

27   established law amenable to [AEDPA's] 'contrary to' or 'unreasonable application of' framework

28   is the gross disproportionality principle, the precise contours of which are unclear and applicable

24

1    only in the 'exceedingly rare' and 'extreme' case."  538 U.S. at 73 (citing <u>Harmelin</u>, 501 U.S.

2    957; <u>Rummel v. Estelle</u>, 445 U.S. 263, 272, 100 S. Ct. 1133 (1980)).

3          Here, petitioner fails to make any clear argument or factual assertion regarding his Eighth

4    Amendment claim.  Petitioner does not cite to legal authority, the state court record, or any of the

5    numerous exhibits attached to his petition.  It is clear, however, that any issue regarding the

6    probation report at issue did not result in cruel and unusual punishment.  The factual errors in the

7    probation report complained of by petitioner were addressed by the trial court at his sentencing

8    proceeding where the trial court ordered the misspellings of petitioner's name and his status as

9    transient to be corrected.  Lod. Doc. 23, RT, 1236, 1238.  The trial court also struck a portion of

10   the report that inaccurately attributed a backpack containing guns and cash as being found "near"

11   petitioner, when it was actually located elsewhere.  <u>Id.</u> at 1241-1244.  Lastly, the trial court

12   amended the report to reflect that petitioner was not criminally liable for the unforeseen assault

13   upon a peace officer that was committed by his codefendant after the robbery was complete.  <u>Id.</u>

14   at 1242-1244.

15         Regardless, petitioner's proper and proportional sentence was a result of his plea, not the

16   report.  Petitioner was set to be retried on all of the charges from his previous trial, which, if he

17   was convicted, would have resulted in sentence of 13 years and 4 months.  Instead, petitioner

18   pleaded no contest in exchange for a 6 year sentence.  Thus, the sentence resulting from his plea

19   was clearly not grossly disproportionate to the crimes he was charged with.  Because petitioner

20   does not raise an inference of gross disproportionality, this Court need not compare petitioner's

21   sentence to the sentences of other defendants.  This simply is not a case where "a threshold

22   comparison of the crime committed and the sentence imposed leads to an inference of gross

23   disproportionality."  <u>Solem</u>, 463 U.S. at 1004-05.  Furthermore, petitioner's conclusory

24   allegations, which are not supported by any specific facts, do not warrant habeas relief.  <u>See</u>

25   <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).  Therefore, petitioner's Eighth Amendment claim

26   should be denied.

27   /////

28   /////

1  V.  Ineffective Assistance of Counsel

2        In his final claim, petitioner asserts that he was denied "effective assistance of counsel."

3  ECF No. 1, 4.  Petitioner alleges that his "[c]ounsel did not follow the duty of an attorney by

4  filing motions on [his] behalf when a open (sic) case is made through the [California] State Bar

5  Association.  In open court counsel stated with no prior strike that I qualify for day-for-day

6  credits, violated my constitutional right for the 6th, 8th and 14th amendments."  Id.  Respondent

7  contends that petitioner's claim is unexhausted, but, in recognizing that the court may rule on an

8  unexhausted claim if the ultimate result is a denial on the merits, alleges that this claim lacks any

9  substantive merit.  ECF No. 26, 32-35.

10       Again, petitioner's fails to make any clear argument or factual assertion regarding his

11  claim.  Petitioner does not cite to legal authority, the state court record, or any of the numerous

12  exhibits attached to his petition.  Based on this Court's review of the record, petitioner's claim

13  relates to his counsel's request to the trial court at petitioner's sentencing proceeding to award

14  petitioner day-for-day conduct credits and to his counsel's failure to assist petitioner with the state

15  bar disciplinary proceedings.

16       As discussed above, to succeed on an ineffective assistance of counsel claim, petitioner

17  must show (1) that his trial counsel's representation fell below an objective standard of

18  reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional

19  errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 688.

20  Petitioner's conclusory allegations are not supported by any fact that could lead to a finding that

21  his counsel's actions either fell below the standard of a reasonably competent attorney or caused

22  prejudice to the outcome of the proceedings.  Counsel's request for conduct credits was proper

23  and did not cause any harm to petitioner.  In fact, petitioner ultimately received the full amount of

24  credit to which he was entitled.  Lod. Doc. 22, CT, 459-460; Lod. Doc. 23, RT, 1249; Lod. Doc.

25  24, CTII, 96-97.  Also, petitioner lacked any Sixth Amendment right to the assistance of counsel

26  in his proceedings before the state bar.  Furthermore, a competent attorney would certainly

27  decline to assist a former client from pursuing a bar complaint against him.

28       Petitioner's ineffective assistance claim lacks merit and should be denied.

26

CONCLUSION

For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's application for a writ of habeas corpus (ECF No. 1) be DENIED; and

2.  The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 23, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:33/Clar2687.hc.fr

27